OPINION OF THE COURT
 

 Levine, J.
 

 This discovery dispute arises out of a medical malpractice action in which plaintiffs-respondents Barbara and James Logue seek recovery for injuries that Barbara allegedly sustained while undergoing laparoscopic cholecystectomy surgery to remove her gallbladder, performed by defendant-
 
 *16
 
 appellant Robert F. Barnes, doctor of osteopathy. Plaintiffs’ theories of liability include claims that Dr. Barnes was inadequately trained to perform the procedure, and that defendant-appellant Lake Shore Hospital (Hospital) was negligent in granting him privileges to conduct this type of surgery at the Hospital.
 
 *
 

 Plaintiffs issued a pretrial disclosure request to the Hospital seeking copies of Dr. Barnes’ initial application and subsequent renewal application for laparoscopic cholecystectomy privileges and all supporting documentation. The Hospital refused to turn over the application materials, asserting that provisions of the Education Law and the Public Health Law, which protect the confidentiality of records related to the medical quality review function of hospitals, barred such disclosure (see, Education Law § 6527 [3]; Public Health Law §§ 2805-j, 2805-k, 2805-m).
 

 Thereafter, Supreme Court granted plaintiffs’ motion to compel disclosure, determining that the materials were not shielded by the Public Health Law or the Education Law and, in any event, the statutory “statements exception” set forth in Education Law § 6527 (3) would permit disclosure. Section 6527 (3) excludes from confidentiality statements made at a medical review proceeding by an individual who is a party to an action or proceeding, “the subject matter of which was reviewed at such meeting” (Education Law § 6527 [3]). The Appellate Division affirmed on the grounds that the applications and supporting documents were discoverable under the Education Law § 6527 (3) statements exception and the identical exception found in Public Health Law § 2805-m (2) (241 AD2d 960). Two Justices dissented, concluding that the applications were submitted as part of a formal medical review procedure and should be protected under the Education Law. The dissenters also rejected the notion that the statements exception applied because the applications were not statements regarding the subject matter of the instant action, i.e., the alleged negligent surgery. The Appellate Division granted defendants leave to appeal on the certified question of whether its order was correctly made. We reverse, and answer the certified question in the negative.
 

 The New York State Education Law shields from disclosure “the proceedings [and] the records relating to performance of a
 
 *17
 
 medical or a quality assurance review function or participation in a medical and dental malpractice prevention program” (Education Law § 6527 [3]). The purpose of the discovery exclusion is to “enhance the objectivity of the review process” and to assure that medical review committees “may frankly and objectively analyze the quality of health services rendered” by hospitals
 
 (see,
 
 Mem of Assembly Rules Comm, Bill Jacket, L 1971, ch 990, at 6). By guaranteeing confidentiality to quality review and malpractice prevention procedures, this provision is designed to encourage thorough and candid peer review of physicians, and thereby improve the quality of medical care
 
 (id.; see also, Lilly v Turecki,
 
 112 AD2d 788).
 

 Subsequently enacted provisions of the Public Health Law embodied the same policy as, and in large measure duplicated, the confidentiality guarantee of Education Law § 6527 (3). In the mid-1980s, the Legislature passed comprehensive malpractice reforms designed to restrain oppressive increases in medical malpractice insurance premiums by introducing procedural and substantive restrictions on malpractice suits, while also reducing the incidence of malpractice by requiring more peer self-policing and by improving the investigation of, and methods of disciplining, physician misconduct
 
 (see,
 
 Legislative findings and declaration, L 1985, ch 294, § 1; Legislative findings and declaration, L 1986, ch 266, § 1). Amendments to article 28 of the Public Health Law addressed the latter objective. Public Health Law § 2805-j specifically requires every hospital to “maintain a coordinated program for the identification and prevention of medical * * * malpractice” (Public Health Law § 2805-j [1]). The mandated malpractice program must include periodic reviews of physicians’ credentials and competence
 
 (see, id.).
 
 In addition, prior to granting or renewing professional privileges, a hospital is obligated to request specific, detailed information from physicians, including professional experience, incidents of misconduct, education, and training
 
 (see,
 
 Public Health Law § 2805-k [1]).
 

 Public Health Law § 2805-m confers complete confidentiality on information gathered by a hospital in accordance with Public Health Law §§ 2805-j and 2805-k, expressly exempting it from disclosure under CPLR article 31
 
 (see,
 
 Public Health Law § 2805-m [2]). These protections against disclosure were added to the Public Health Law to “clarify that existing protections against disclosure of materials relating to quality assurance activities apply to hospital malpractice prevention programs and incident reporting” (L 1986, ch 266, Bill Jacket, Governor
 
 *18
 
 Program Bill, at 7;
 
 see also, id.,
 
 Executive Chamber Mem, at 16).
 

 Dr. Barnes’ initial and renewal applications for privileges fall squarely within the materials that are made confidential by Education Law § 6527 (3) and article 28 of the Public Health Law. In opposition to plaintiffs’ motion to compel disclosure, the Hospital submitted affidavits of its medical director, the staff person responsible for overseeing the credentialing of physicians during the relevant years. These affidavits state that the application materials at issue were reviewed by the Hospital’s credentialing committee as part of a procedure conducted every two years to assess physicians’ competence for issuing or renewing privileges and to prevent medical malpractice. It necessarily follows that the applications were required as part of a process to insure the capability of an attending physician to perform the procedures for which privileges were to be granted and, thus, were “records relating to [the Hospital’s] performance of a medical or a quality assurance review function” (Education Law § 6527 [3]).
 

 In addition, according to the uncontroverted statement of the Hospital’s medical director, the pertinent information here was specifically and expressly compiled by the Hospital to comply with the statutory requirements of the Public Health Law. As we have already noted, Public Health Law § 2805-j requires periodic review of a physician’s credentials and competence, and section 2805-k requires detailed information from a physician in connection with granting and renewing professional privileges, all for the purpose of maintaining an active program to prevent malpractice (see, Public Health Law § 2805-j [1]; § 2805-k [1]). Thus, the conclusion is inescapable that these statements were covered by the privileges of Public Health Law § 2805-m (2) (see,
 
 Crea v Newfane Inter-Community Mem. Hosp.,
 
 224 AD2d 976, 977).
 

 Having established that Dr. Barnes’ applications are protected by the foregoing confidentiality provisions, we turn to plaintiffs’ argument that the applications nevertheless are discoverable as “statements made by any person in attendance at such a meeting who is a party to an action or proceeding the subject matter of which was reviewed at such meeting” (Education Law § 6527 [3]; Public Health Law § 2805-m [2] [identical language]). As written, the exception is narrow and limited to statements given at an otherwise privileged peer review meeting by a party to a lawsuit which involves the same underlying conduct that is the topic of discussion at the meeting. The
 
 *19
 
 evident purpose of this provision is to permit discovery of statements given by a physician or other health professional in the course of a hospital’s review of the facts and circumstances of an earlier incident which had given rise to a malpractice action (see,
 
 e.g., Swartzenberg v Trivedi,
 
 189 AD2d 151, 153,
 
 appeal dismissed
 
 82 NY2d 749). The applications which are the subject of the disclosure request in the instant case, however, were submitted well before the alleged malpractice concerning plaintiff Barbara Logue, and were not made in connection with a peer review of
 
 any
 
 malpractice claim.
 

 Plaintiffs read the exception as applying here because the subject matter of their claim against defendant Hospital is the negligent granting and renewing of Dr. Barnes’ privileges, and thus, his earlier applications constitute “statements” regarding that subject matter. We decline the invitation to expand the narrow statutory exception to nondisclosure in this manner. To do so would make it possible for virtually every plaintiff, in any action for medical malpractice, to circumvent the confidentiality provisions of Education Law § 6527 (3) and article 28 of the Public Health Law by the simple device of asserting a claim against the hospital for negligent credentialing. Such a rule would extend the statements exception to a point where it would swallow the general rule that materials used by a hospital in quality review and malpractice prevention programs are strictly confidential.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, plaintiffs’ motion to compel the subject disclosure denied, and the certified question answered in the negative.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Ciparick and Wesley concur.
 

 Order reversed, etc.
 

 *
 

 Plaintiffs also have asserted claims, not relevant here, against additional defendants who are not parties to this appeal.